IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JAYSON C.,[1]                                                         No. 1:25-cv-00168-YY

               Plaintiff,                                      OPINION AND ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

YOU, Magistrate Judge.

Plaintiff Jayson C. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C.

§§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant

to 42 U.S.C. §§ 405(g). For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for further proceedings consistent with this opinion.

**PROCEDURAL BACKGROUND**

Plaintiff alleges disability beginning May 5, 2019, due to fibromyalgia, rheumatoid

arthritis, lupus, posttraumatic stress disorder, depression, anxiety, insomnia, transgender surgery,

and maladaptive daydreaming. Tr. 345, 349. His claims were denied initially and upon

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

1 – OPINION AND ORDER

reconsideration. On November 21, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did plaintiff's partner and a vocational expert ("VE"). Tr. 51–90. On February 14, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 16–34. After the Appeals Council denied plaintiff's request for review, plaintiff filed a complaint in this Court. Tr. 1–6.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it was based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for the Commissioner's when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ

2 – OPINION AND ORDER

determined the following impairments were medically determinable and severe: "fibromyalgia, inflammatory arthritis, systemic lupus erythematosus (SLE) and mental impairments variously diagnosed to include somatic symptom disorder, posttraumatic stress disorder (PTSD), anxiety/panic disorder, and gender dysphoria." Tr. 19.

At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19. The ALJ found plaintiff had the residual function capacity ("RFC") to perform light work except:

> [He] can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl. He can frequently perform bilateral gross and fine manipulation. He can have frequent exposure to extreme cold and heat, frequent use moving mechanical parts, and have frequent exposure to unprotected heights. He cannot perform assembly line work or work that requires hourly quotas. He can perform work involving only occasional workplace changes.

Tr. 22.

At step four, the ALJ determined plaintiff was able to perform past relevant work as a fast food worker and coffee attendant. Tr. 31. At step five, the ALJ concluded, based on the VE's testimony, there were a significant number of jobs in the national economy plaintiff could perform despite his impairments. Tr. 33.

## DISCUSSION

Plaintiff claims the ALJ erred in (1) discounting his subjective symptom testimony without providing clear and convincing reasons, (2) rejecting his partner's lay witness testimony, (3) discounting the medical opinions of Thomas Warren Roseland, CNP, and Nat Fondell, MD, and (4) formulating his RFC without including all of his limitations. Pl. Br. ii–iv, ECF 12.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In his function reports and at his hearing on Augst 22, 2023, plaintiff testified he was unable to work because his pain, fatigue, and insomnia prevented him from maintaining consistent work attendance. Tr. 360. He testified his insomnia would keep him awake 24 to 48

hours at a time and sometimes he could not move his body for one to six hours when he awoke. Tr. 360, 58. Plaintiff explained brain fog from his fibromyalgia prevented him from multitasking and caused him to forget things easily. Tr. 362.

Regarding his more physical symptoms, plaintiff testified he could walk fifty feet around his house before needing to rest for twenty minutes. Tr. 365. He complained of pain in his legs and lower back that felt "like they're exploding from the inside" and his pain kept him "locked in bed." Tr. 60. Plaintiff experienced pain when standing and sitting, and needed to lie down to try to find comfort. Tr. 61. He used to draw a lot but had to stop because it was too difficult to hold a pencil. Tr. 65. He was still able to carve wood occasionally, but doing so prevented him from using his hands as much in the following days. *Id.* He typically had four or five good days a month when he could be more active and his symptoms were less limiting. Tr. 75–76.

With respect to his activities of daily living, plaintiff complained of struggling to maintain a regular schedule and would sometimes sleep during the day due to his insomnia. Tr. 59–60. He was able to care for pets by filling their dishes and cleaning the litter box weekly, shop for groceries with his roommates, clean dishes, sweep, wipe down counters, and water plants. Tr. 361–62. He could cook a full meal once a month if he was able but would otherwise eat microwaveable meals. Tr. 362. He enjoyed watching sword fighting, hiking, and visiting with friends. Tr. 364.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*.

5 – OPINION AND ORDER

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7–8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Plaintiff has been diagnosed with fibromyalgia, which "cannot be diagnosed by . . . 'objective testing.' " *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); SSR 12-2p, 2012 WL 3104869, at *3; *see also Hummel v. Kijakazi*, 2023 WL 7318492, at *1–2 (9th Cir. Nov. 7, 2023) (holding "normal medical results," conservative treatment, and regular daily activities, without context showing frequency or extent, are insufficient to reject a claimant's fibromyalgia testimony). Because fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue, it is diagnosed entirely on the basis of a patient's reports of pain and other symptoms. *Benecke*, 379 F.3d at 589–90. There are no clinical laboratory tests to confirm the diagnosis. *Id.* Fibromyalgia's cause or causes are

unknown, there is no cure, and its symptoms are entirely subjective. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001).

Here, in finding inconsistencies between plaintiff's symptom testimony and the medical record, the ALJ cited to treatment notes indicating plaintiff "presented as alert, awake, and without distress." Tr. 23 (citing Tr. 489, 1117, 1347, 1351, 1360, 1369, 1696, 1729, 1877, 1952, 514, 524, 1360, 1368, 1309, 995, 1157, 1177, 480). The ALJ additionally cited records indicating plaintiff "demonstrated normal mobility and full strength with intact neurologic functioning." Tr. 23 (citing Tr. 1360, 1369, 1297, 543, 524). Lastly, the ALJ cited numerous records to support his finding that plaintiff presented "appropriate attention, thinking, memory, judgment, and insight," contrary to plaintiff's testimony. Tr. 23 (citing Tr. 830–31, 837, 1361, 1952, 995, 1083, 554, 1157, 1177, 1217–18, 1235, 1427, 1438, 1622, 1297, 1309, 1386, 1696, 1726, 1729, 1875–77).

Plaintiff is correct to argue the ALJ erred by finding his normal status exams established inconsistency between his symptom testimony and the objective medical evidence. Pl. Br. 13–14, ECF 12. As explained above, someone with fibromyalgia "may have muscle strength, sensory functions, and reflexes [that] are normal." *Revels*, 874 F.3d at 663 (simplified). Although the ALJ found plaintiff's fibromyalgia to be a medically determinable severe impairment and acknowledged plaintiff presented 18 out of 18 of the tender points used to diagnose fibromyalgia, the ALJ ignored the legal consequences of his finding throughout his decision. Tr. 19, 24, 25, 26, 22–31.

Further, the medical records the ALJ relied upon to show inconsistency between plaintiff's testimony and the medical record in fact support plaintiff's symptom testimony. Tr. 23. For example, one medical record the ALJ cited from September 2023 indicated plaintiff was

7 – OPINION AND ORDER

alert, oriented, and not in acute distress, but also reported plaintiff experienced chronic and widespread pain rated at seven out of ten. Tr. 1347. The same chart notes describe plaintiff's fatigue, neuropathy, and joint pain in his hands and feet. *Id.* Another record from August 2023 reported plaintiff was alert, awake, oriented, and not in acute distress. Tr. 1351. However, notes from the same appointment indicate plaintiff experienced persistent pain that was "throbbing, shooting, burning, stabbing, constant ache in nature." *Id.* The notes also state plaintiff's pain worsened with movement, he experienced severe fatigue, and he had difficulty with daily activities "including tying shoelaces and doing buttons, getting in and out of bed, lift[ing] anything, walking, working, etc." *Id.* Finally, a September 2021 record the ALJ relied upon to indicate a normal status exam also reported plaintiff had worsening all-over pain, severe fatigue, nausea, and decreased appetite, did not sleep for 24 to 48 hours at a time, and exhibited 18 of 18 fibromyalgia tender points. Tr. 1360, 1358.

An ALJ may not single out (i.e., cherry-pick) isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as being inconsistent with the medical record as a whole. *Garrison*, 759 F.3d at 1017–18. Thus, the ALJ erred in discounting plaintiff's symptom testimony based on the inconsistencies the ALJ cited.

### B.      Treatment

The ALJ also discredited plaintiff's symptoms because plaintiff chose "to engage in limited pain management, not simply due to adverse reactions to medication but also by pursuing limited follow-up on referrals for alternative treatment such has physical therapy and acupuncture." Tr. 27 (citing Tr. 1297, 1409, 1256). As the ALJ correctly noted, plaintiff attempted taking medications such as gabapentin, Plaquenil, and methotrexate; however, each was discontinued after plaintiff suffered adverse reactions. Tr. 24. Regarding referrals, the record

shows plaintiff attempted to follow up on a referral for physical therapy; however, his insurance did not cover the treatment. Tr. 490 ("Regarding: FUNDED DX CODE NEEDED Thank you for your referral unfortunately the codes provided are not funded . . . Fibromyalgia dx codes is M79.7 is not funded either."). Because plaintiff depended on Oregon Health Plan for treatment and had a monthly income ranging from $14 to $50, it was error for the ALJ to discount plaintiff's testimony due to lack of treatment that was not covered by insurance. Tr. 554; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"); *see also, e.g., Trevizo*, 871 F.3d at 680–81 (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

The ALJ also mentioned plaintiff reported "significant improvement in his stiffness with prednisone"; however the medical records the ALJ cited do not reflect overall improvement of plaintiff's symptoms. Tr. 25 (citing Tr. 1347). Although the record states plaintiff had "an improvement in his stiffness," the record also states plaintiff experienced severe fatigue, chronic seven out of ten pain, and "he [did] not have too much improvement in his joint pain." Tr. 1347. As explained above, cherry-picking is improper, and isolating one positive line out of a page of complaints is not a clear and convincing reason to discount plaintiff's testimony.

### C.    Activities of Daily Living

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his activities of daily living. Tr. 27. Plaintiff argues the activities listed by the ALJ are actually consistent with his testimony. Pl. Br. 17–21, ECF 12.

9 – OPINION AND ORDER

To establish inconsistencies between plaintiff's testimony and his activities, the ALJ referenced records stating plaintiff fenced weekly, chopped wood, built fences, prepared his own food, performed 75% of the cleaning in his household, and was socially active with friends and neighbors. Tr. 27. (citing Tr. 1576, 1767, 1926, 646, 554, 1424–26, 1605). First, neither of the records the ALJ cited report plaintiff built fences. Tr. 27 (citing 1767, 1864). Moreover, plaintiff's weekly fencing was consistent with his hearing testimony of having "four, maybe five" good days a month when his hands felt maneuverable. Tr. 75. Also, plaintiff reported being "in a lot of physical pain after going to a fencing event" in July 2021, consistent with his testimony of occasionally partaking in physical activities but having to rest afterward. Tr. 1576. This type of experience is reflected in the Social Security Administration's characterization of the symptoms of fibromyalgia. *See Revels*, 874 F.3d at 657 ("Further, SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.' ") (quoting SSR 12-2P at *6).

As for preparing food, cleaning the house, and socializing, these also were not valid reasons to discount plaintiff's testimony. The record shows that plaintiff performed housecleaning when he was able to do so; there was no cleaning schedule, and his ability to clean was "inconsistent" and "unpredictable." Tr. 86. Plaintiff's activities of self-care and socializing were consistent with his testimony of chronic pain, fatigue, and having four or five good days a month. *Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2009) (recognizing that one need not be relegated to vegetating in a dark room to be eligible for benefits) (citing *Cooper v. Bowen*, 815 F.2d 557, 661 (9th Cir. 1987)); *see also Orn v. Astrue*, 495 F.3d at 625, 639 (9th Cir. 2007) (observing the ability to carry out minimal activities such as reading, watching television, and coloring in coloring books does not detract from allegation of overall disability); *Reddick*, 157

10 – OPINION AND ORDER

F.3d at 722  ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

In sum, the ALJ failed to provide clear and convincing reasons to discount plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms.

## II.    Lay Witness

The ALJ considered plaintiff's partner's lay witness testimony and found it "largely echo[ed] the claimant's allegations and similarly lack the full support of the longitudinal record." Tr. 31. The ALJ did not cite to any portions of the record to support this rationale, instead apparently tying his finding to that regarding plaintiff's testimony. *Id.* For the same reasons the ALJ erred in discrediting plaintiff's testimony, the ALJ also erred in assessing plaintiff's partner's testimony.

## III.    Medical Opinion Evidence

Plaintiff argues the ALJ did not properly evaluate the medical opinions of Thomas Warren Roseland, CNP, and Nat Fondell, MD. Pl. Br. 24–33, ECF 12.

### A.    Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20

11 – OPINION AND ORDER

C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other

secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### B.    Thomas Warren Roseland, CNP

Thomas Warren Roseland, CNP, met with plaintiff on July 10, 2021, for a Social Security Disability Consultative Examination. Tr. 538. Roseland reviewed plaintiff's medical history and performed a physical examination. Tr. 538–44. Plaintiff reported there were days he was unable to get out of bed due to flares of pain caused by his rheumatoid arthritis, fibromyalgia, and systemic lupus erymathia. Tr. 539. Plaintiff reported his pain was sharp, achy, and electrical with extreme touch sensitivity ranging from six to nine out of ten intensity. *Id.* He explained his birth mother, father, sibling, and grandmother all suffered from fibromyalgia as well as rheumatoid arthritis. *Id.* Plaintiff said he had to rest completely for one to two days after participating in any long or all-day activity. *Id.* He reported he used will power and distraction to deal with the multiple types of pain he experienced daily, regardless of activity level, because he had adverse reactions to medications in the past. *Id.*

During the physical examination, plaintiff presented with normal speech, memory, concentration, and affect. Tr. 539. Roseland opined plaintiff's physical examination was relatively normal other than he perceived skin touch as pain almost everywhere, had "slightly

13 – OPINION AND ORDER

boggy finger joints" that were very tender and would become painful with use, and had positive Phalen's and Tinel's tests. Tr. 539–40. Lastly, Roseland opined plaintiff was able to grasp, shake hands, write, and pick up a coin and a cup with both hands, but had pain and discomfort with use. Tr. 540.

Roseland opined plaintiff had limitations in sitting, standing, walking, lifting, carrying, bending, and stooping. Tr. 543–44. Roseland further opined plaintiff could perform the actions listed above occasionally, but doing so would "initiate a flare and exacerbation of [rheumatoid arthritis], [systemic lupus erythematosus], and fibromyalgia pain." *Id.*

The ALJ found Roseland's opinion was "not persuasive" because it was not well supported by his physical examination of plaintiff and inconsistent with plaintiff's medical record. *Id.* Regarding supportability, the ALJ found Roseland's physical examination did not support the limitations because "the examination was essentially normal except for 'slightly boggy fingers.' " Tr. 29 (quoting Tr. 540). That is a mischaracterization of the record—Roseland also observed "[s]kin touch is perceived as pain almost everywhere," plaintiff's finger joints "are very tender and will swell and become painful with use," and repetitive muscular activity resulting in "reactive skin, joint, and muscle pain requiring long rest and recovery periods." Tr. 540. Furthermore, as explained above, an "essentially normal" physical examination may be consistent with debilitating fibromyalgia. *See Revels*, 874 F.3d at 666; *see also Benecke*, 379 F.3d at 590.

Regarding consistency, the ALJ found Roseland's opinion inconsistent with plaintiff's "longitudinal record which contains years of medical records indicating that the claimant did not present in distress and typically demonstrated normal mobility, strength, and neurological functioning despite allegations of pain, fatigue, and weakness." Tr. 29 (citing Tr. 1360, 1369,

14 – OPINION AND ORDER

1297, 543, 524). As explained in the previous sections, the ALJ again erred by relying on largely normal status examinations to discredit plaintiff's fibromyalgia-related symptoms.

### C.    Nat Fondell, MD

Nat Fondell, MD, was plaintiff's treating provider from April 12, 2021, to at least November 20, 2023. Tr. 1981, 1979. Dr. Fondell provided a checkbox form dated November 13, 2023 opining on plaintiff's limitations. Tr. 1977–81. This opinion included a copy of a previous letter Dr. Fondell wrote regarding plaintiff's limitations dated October 4, 2023. Tr. 1419–20, 1980–81. Dr. Fondell opined plaintiff suffered from lupus, rheumatoid arthritis of multiple sites, polyarthropathy, polyneuropathy, polymyopathy, and fibromyalgia. Tr. 1977. Dr. Fondell explained plaintiff experienced "severe hand and joint pain, fatigue, fogginess and confusion in his thinking, difficulty with reliable and consistent physical ability, insomnia due to pain, chronic pain in general and in many specific body areas" due to those diagnoses. Tr. 1978, 1981. Dr. Fondell stated plaintiff would require additional unscheduled breaks, each averaging a minimum of two hours, if he were to work a simple, routine job five days a week with eight-hour workdays. Tr. 1978. Dr. Fondell continued to opine plaintiff's symptoms and impairments would cause him to miss work at least two days a month and would impact his concentration, taking him off task for at least a quarter of an eight-hour workday. Tr. 1978–79. Finally, Dr. Fondell expressed frustration at the lack of clear labs or imaging to track and report plaintiff's diagnoses, but confirmed plaintiff's level of functional impairment was consistent with other patients with similar diagnoses. Tr. 1981.

The ALJ found Dr. Fondell's opinion to be unpersuasive because it was unsupported and inconsistent with plaintiff's medical record. Tr. 29–30. The ALJ found Dr. Fondell's opinion not well supported because he delivered his opinion via a checkbox form. Delivering a medical

15 – OPINION AND ORDER

opinion via checkbox form is not in itself a reason to discount a medical opinion. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (holding "provid[ing] information in a check-box form provides no reason to reject her opinions"). This is especially true where, as here, the doctor who completed the form had a long-standing relationship with the claimant that is documented in treatment notes. *Garrison*, 759 F.3d at 1013 (holding the ALJ committed "egregious" error by "fail[ing] to recognize that the opinions expressed in [the] check-box form . . . were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").

The ALJ also found Dr. Fondell "was basing the limitations on what other people with similar diagnosis may experience." Tr. 29. But, while Dr. Fondell opined plaintiff's functional limitations were consistent with other patients' with similar diagnoses, he based his opinion on plaintiff's diagnoses and his experience of treating plaintiff for over two years. Tr. 1981. Dr. Fondell never opined he based his opinion on other patients' symptoms. Tr. 1977–81.

Finally, the ALJ rejected Dr. Fondell's opinion because his examination of plaintiff "identified some tenderness and stiffness but revealed objectively normal sensation, strength, reflexes, and neurological functioning both on clinical examination and based on electrodiagnostic testing." Tr. 30 (citing 1295–98). As explained above, objectively normal status examinations may be consistent with debilitating fibromyalgia. Moreover, the examination that the ALJ attributed to Dr. Fondell was not conducted by Dr. Fondell, but by a different doctor, Peter A. Grant, MD.

Regarding consistency, the ALJ reasoned plaintiff's ability to independently care for himself and engage in activities such as fencing, house cleaning, and spending time with friends

16 – OPINION AND ORDER

and neighbors was inconsistent with Fondell's opined limitations. Tr. 30. However, the extent to which plaintiff could in fact perform those activities in fact was consistent with Dr. Fondell's opinion because, as the ALJ even noted, "[t]he record does indicate that the claimant reported difficulty performing activities." Tr. 30; *see Revels*, 874 F.3d at 664 (holding a doctor's opinion limiting a plaintiff with fibromyalgia to require breaks during the workday was consistent with plaintiff's description of struggling with daily activities).

## IV.    Remedy

When the court determines the Commissioner erred in deciding to deny benefits, it has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke*, 379 F.3d at 590 ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), as amended (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison*, 759 F.3d at 1020). Even if those requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"

17 – OPINION AND ORDER

*Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of benefits only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (simplified).

This is not one of those rare circumstances where remand for award of benefits is appropriate. Instead, the court remands the case for the ALJ to reassess plaintiff's subjective symptom testimony, plaintiff's partner's testimony, and the medical opinions of consultative examiner Roseland, CNP, and plaintiff's treating physician Dr. Fondell, MD, and to conduct additional further proceedings as necessary for rendering a decision regarding whether plaintiff is disabled.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED March 20, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
